UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Matthew Dow Scurlock, *pro se*,　　　　　　　　　　Case No. 3:19-cv-686

　　　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

State of Ohio, et al.,

　　　　　Defendants.

## I.　Introduction

Defendants the State of Ohio, Warden James Haviland, Ms. Mason, Dr. Froehlich, Mrs. Featheringham, Ms. Esther, Mr. Godfrey, Mrs. Hardwick, and Mrs. Giddens move to dismiss the complaint filed by *pro se* Plaintiff Matthew Dow Scurlock for failure to state a claim upon which relief may be granted. (Doc. No. 9). Scurlock filed a brief in opposition. (Doc. No. 11). Scurlock filed a motion to amend his complaint, (Doc. No. 12), as well as a motion to compel discovery. (Doc. No. 6). For the reasons stated below, I grant Scurlock's motion to amend his complaint, deny his motion to compel discovery, and grant Defendants' motion to dismiss.

## II.　Background

Upon arriving at the Correctional Reception Center ("CRC") in Orient, Ohio, in May of 2017, Scurlock reported to a mental health case worker that he had been in protective custody during his previous term of incarceration and that he needed to be returned to protective custody because a threat still existed to his safety. (Doc. No. 1 at 4). The case worker documented

Scurlock's request and he was placed in a residential treatment unit at CRC.  (*Id.*).  He remained in that unit until July 6, 2017, when he was transferred to the Allen-Oakwood Correctional Institution in Lima, Ohio ("AOCI").

Scurlock alleges at least eight different individuals at AOCI were aware of his protective custody request – Dr. Froehlich, Warden Haviland, Ms. Mason, Mrs. Featheringham, Ms. Esther, Mr. Godfrey, Mrs. Hardwick, and Mrs. Giddens.  (Doc. No. 1 at 5, 7).  Scurlock remained in the residential treatment unit at AOCI for another eight months, until February 3, 2018, when he was assaulted by another inmate.  (Doc. No. 1-1 at 1).  Scurlock alleges his jaw was fractured in three places as a result of the assault and that he suffered facial disfigurement and permanent numbness.  (Doc. No. 1 at 9).  He claims the Defendants violated his rights under the Fifth, Eighth, and Fourteenth Amendments, and seeks $2 million in damages.  (Doc. No. 1 at 4, 6).

### III.   STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations.  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Factual allegations must be sufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a Rule 12(b)(6) motion, the court may consider the allegations in the complaint as well as any exhibits attached to the complaint, as long as the complaint refers to the exhibit and the exhibit is central to the claims set forth in the complaint.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. ANALYSIS

### A. MOTION TO AMEND

Scurlock filed a motion to amend his complaint to clarify that he named "the State of Ohio as a Defendant in an official capacity, [and the individual defendants] as defendants in their individual capacities . . . ." (Doc. No. 12). Scurlock filed his motion to amend fewer than 21 days after Defendants served their motion to dismiss and therefore, I grant his motion to amend. *See* Fed. R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course within . . . , if the pleading is one to which a responsive pleading is required, . . . 21 days after service of a motion under Rule 12(b) . . . .").

### B. MOTION TO DISMISS

Defendants argue Scurlock fails to state a claim for relief, even after taking into account the extra latitude provided to *pro se* filings. *See, e.g., Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (noting *pro se* pleadings must be held to less stringent standards than attorney filings).

Despite his amendment, Scurlock's claims against the State of Ohio must fail. The Eleventh Amendment bars a lawsuit against a State, whether the plaintiff seeks monetary or injunctive relief, unless the State has waived its immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). The State of Ohio has not waived its immunity in federal court for suits of this type and therefore, Scurlock's claims are barred.

Scurlock's claims against the individual Defendants are not barred by the Eleventh Amendment because those claims are pled against those officials in their individual capacities, not their official capacities. *See Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002).

#### 1. Fifth and Fourteenth Amendments

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of

property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002).  While Scurlock includes a reference to the Fifth Amendment in his complaint, he does not provide any factual details in his complaint or legal theories in his brief which might provide some context to this reference.  To the extent Scurlock seeks to assert a due process claim based upon the Defendants' alleged failure to hold "a committee hearing" to determine whether Scurlock should be placed in protective custody, that claim would arise from the Fourteenth Amendment.

Scurlock's Fourteenth Amendment claims fares no better, however.  Even if Ohio has adopted a mandatory procedure to be followed when an inmate requests placement in protective custody, that procedure does not also create in Scurlock a liberty interest which he may vindicate through the Fourteenth Amendment.  *Rimmer-Bey v. Brown*, 62 F.3d 789, 790 (6th Cir. 1995) ("[A] state regulatory scheme does not create a liberty interest merely because the regulations incorporate 'language of an unmistakably mandatory character.'" (quoting *Sandin v. Conner*, 515 U.S. 472, 480 (1995))); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (An inmate does not have a constitutional right to a specific security classification.).

Scurlock fails to state a claim for relief under either the Fifth or the Fourteenth Amendments and I grant Defendants' motion to dismiss these claims.

**2. Eighth Amendment**

An inmate claiming prison officials violated the Eighth Amendment must show the officials acted with deliberate indifference to the inmate's safety.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  The first part of the deliberate-indifference showing requires a prisoner show "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834.  The second part requires a showing that the defendant knew of and disregarded an excessive risk to inmate health or safety – "the official must both be aware of the facts from which the inference could be drawn that a

4

substantial risk of harm exists, and he must also draw the inference." *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 837).

Scurlock alleges Defendants had numerous discussions about placing him back in protective custody but "[i]t was determined that '[he] would be safe'" in the residential treatment unit at AOCI. (Doc. No. 1 at 7). Scurlock alleges he was told he would be reconsidered for protective custody once his program in the residential treatment unit was completed. (*Id.*). He does not provide any details about the content of the alleged threats to his safety, including whether the inmate who ultimately attacked him had made any express or implied threats. Nor does he indicate the timeline of his requests for protective custody or Defendants' decision that he "would be safe" in the residential treatment facility. (*Id.*).

Even if I assume Scurlock provided Defendants with more detail about the alleged threats to his safety than he has included in his complaint and his briefing, he fails to show they acted unreasonably in responding to his reported concerns. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817 (6th Cir. 1996).

Dr. Froehlich made several phone calls about placing Scurlock back into protective custody and assured Scurlock that he would ensure Scurlock remained in the residential treatment unit (rather than being moved into general population) if Scurlock was not placed in protective custody. (Doc. No. 1 at 5). Mason noted Scurlock's request for protective custody in her treatment notes. (*Id.*). Esther made several phone calls to Godfrey, the protective custody unit manager, about Scurlock's requests. (*Id.* at 7). Hardwick documented Scurlock's requests in her files and Giddens informed Godfrey and Esther that Scurlock had made requests to be placed in protective custody. (*Id.*). Scurlock fails to show how these Defendants, who communicated about Scurlock's requests

5

before determining his placement in the residential treatment unit was an adequate safety measure, acted with deliberate indifference to his safety. *Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001).

Scurlock alleges only that Warden Haviland "knew [Scurlock] should have went back to [AOCI] on protective custody." (Doc. No. 1 at 5). He alleges Featheringham was the protective custody unit manager during his previous term of incarceration and "was well aware of the threat that existed to my safety . . . ." (*Id.*). These allegation fails to show Haviland or Featheringham actually knew of and disregarded a substantial risk to Scurlock's safety between July 2017, when he returned to AOCI, and February 2018, when he was assaulted by another inmate. *Farmer*, 511 U.S. at 834-37.

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Scurlock fails to allege sufficient facts to state a plausible claim that the Defendants were deliberately indifferent to a substantial risk of serious harm.

## V.    Conclusion

For the reasons stated above, I grant Scurlock's motion to amend his complaint, (Doc. No. 12), deny as moot his motion to compel discovery, (Doc. No. 6), and grant Defendants' motion to dismiss the complaint for failure to state a claim. (Doc. No. 9).

So Ordered.

                                            s/ Jeffrey J. Helmick
                                            United States District Judge